UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHARLETTE MOORER,
        Plaintiff,

                                        CIVIL ACTION NO.
        v.                              08-11584-MLW

DEPARTMENT OF SOCIAL SERVICES,
        Defendant.

**REPORT AND RECOMMENDATION RE:
DEFENDANT'S MOTION TO DISMISS
(DOCKET ENTRY # 13)**

**January 25, 2010**

**BOWLER, U.S.M.J.**

        Pending before this court is a motion to dismiss filed under
Rule 12(b)(1), Fed. R. Civ. P. ("Rule 12(b)(1)"), and Rule
12(b)(6), Fed. R. Civ. P. ("Rule 12(b)(6)"), by defendant
Department of Social Services[1] ("DSS") ("defendant").  (Docket
Entry # 13).  Defendant seeks to dismiss the various claims in
the above styled employment discrimination suit on the basis of:
(1) state sovereign immunity; and (2) plaintiff Charlette
Moorer's ("plaintiff") failure to exhaust administrative
remedies.

        On September 9, 2009, plaintiff filed this pro se action and
a motion to proceed in forma pauperis.  (Docket Entry ## 1 & 2).

---

        [1]  The Department of Social Services changed its name to the
Department of Children and Families in July 2008.

Although not expressly stated in the complaint or in response to an order to show cause (Docket Entry # 4), it appears plaintiff alleges causes of action under the Massachusetts Anti-Discrimination Law, section four of the Massachusetts General Laws chapter 151B ("chapter 151B"), Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 et seq., and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.[2]

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(1), a defendant may move to dismiss an action for lack of federal subject matter jurisdiction. "The party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). To determine if the burden has been met, a court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s]

---

[2] Plaintiff does not expressly identify a legal basis for her claims for monetary relief. Nonetheless, this court liberally construes the complaint because "[o]ur judicial system zealously guards the attempts of pro se litigants on their own behalf." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972). As noted in the court's June 20, 2009 Order, plaintiff "brings this action against her former employer for sexual harassment and denial of reasonable accommodations for her medical condition." (Docket Entry # 9).

all reasonable inferences therefrom in the plaintiffs' favor."
Fothergill v. U.S., 566 F.3d 248, 251 (1st Cir. 2009).

Under Rule 12(b)(6), a defendant may move to dismiss an
action for failure to state a claim upon which relief may be
granted. "A plaintiff's obligation to provide the 'grounds' of
his 'entitlement to relief' requires more than labels and
conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555
(2007). "Factual allegations must be enough to raise a right to
relief above the speculative level." Id. When a court considers
a Rule 12(b)(6) motion, like a Rule 12(b)(1) motion, it must
"take all factual allegations as true and draw all reasonable
inferences in favor of the plaintiff." Rodriquez-Ortiz v. Margo
Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); see also
Alternative Energy, Inc. v. St. Paul Fire & Marine Insurance Co.,
267 F.3d 30, 33 (1st Cir. 2001).

In general, the court may not consider materials outside the
pleadings on a Rule 12(b)(6) motion, however it may consider such
materials on a Rule 12(b)(1) motion. See Gonzales v. United
States, 284 F.3d 281, 288 (1st Cir. 2002); see also
Montalvo-Padilla v. University of Puerto Rico, 492 F.Supp.2d 36,
39 (D.P.R. 2007). Nonetheless, in reviewing the complaint for
purposes of a Rule 12(b)(6) dismissal, this court may consider
"the relevant entirety of a document integral to or explicitly
relied upon in the complaint, even though not attached to the

complaint, without converting the motion into one for summary

judgment." Clorox Company Puerto Rico v. Proctor & Gamble, 228

F.3d 24, 32 (1st Cir. 2000).

## FACTUAL BACKGROUND[3]

Taking all factual allegations in the pleadings as true,

this court considers the following background facts.  Plaintiff,

a resident of Fall River, Massachusetts, worked for defendant for

20 years.  (Docket Entry # 1, ¶ 1).  From 1985 through 2002,

plaintiff worked as a "Clerk III" at defendant's "123 Morton St.-

Hyde Park Area Office."  (Docket Entry # 1, Ex. 4F).  From 2003

until June 6, 2006, plaintiff worked as a "Clerk III-

Receptionist" at defendant's "Dimock Street Area Office" ("Dimock

Street").  (Docket Entry # 1, Ex. 4F).  Plaintiff describes

Dimock Street as a "ghetto situation."  (Docket Entry # 1, ¶ 1).

Circumstances became "so dangerous" to plaintiff at that office

that she retired on June 6, 2006.  (Docket Entry # 1, ¶ 1).

The work environment forming the basis of the complaint

stemmed from two sources:  (1) the actions of a coworker that

plaintiff contends amounted to sexual harassment (Docket Entry #

1, ¶ 3); and (2) defendant's failure to accommodate plaintiff's

---

[3]  "Exhibits attached to the complaint are properly
considered part of the pleading 'for all purposes,' including
Rule 12(b)(6) motions."  Trans-Spec Truck Service, Inc. v.
Caterpillar Inc., 524 F.3d 315 (1st Cir. 2008).  Furthermore,
this court construes the "additional information" in docket entry
number eight as an amendment to the original complaint.  (Docket
Entry # 19).

asthma (Docket Entry # 1, ¶ 2) and "Bi Polar affliction"[4] (Docket Entry # 4, ¶ 1).

On November 18, 2004, Fred Milliken[5] ("Milliken") and plaintiff were involved in an incident in the hallway at Dimock Street. (Docket Entry # 8, Ex. 1). Milliken kicked plaintiff's right heel (Docket Entry # 8, Ex. 1) and grabbed plaintiff "from behind almost inserting his fingers into [her] privates" (Docket Entry # 1, ¶ 3). Milliken had "peripheral blindness." (Docket Entry # 1, ¶ 3). Plaintiff "was directly in front of him when he unknowingly stepped behind [her] and grabbed [her,] squeezing and not letting go for at least 50 seconds." (Docket Entry # 1, ¶ 3).

On November 22, 2004, plaintiff made a complaint ("internal harassment complaint") to defendant regarding the encounter with Milliken. (Docket Entry # 8, Ex. 1). On January 18, 2005, Lisa Bacon ("Bacon"), defendant's Civil Rights Officer, found that

---

[4] Plaintiff asserts a claim for lack of accommodation for "mental duress due to disability of Bi Polar affliction" for the first time in plaintiff's response (Docket Entry # 4) to the January 7, 2009 Order (Docket Entry # 3) to show cause why the action should not be dismissed. A letter (Docket Entry # 1, Ex. 4C) dated July 5, 2006 stating, "Your diagnosis is Bipolar Disorder," is attached to, but not mentioned in, the complaint. This letter postdates plaintiff's retirement. This court draws the only reasonable assumption that defendant did not receive it while employing plaintiff.

[5] The complaint spells Milliken's name as "Miliken." (Docket Entry # 1, ¶ 3). Milliken was Day Care Coordinator at Dimock Street at the time of the incident. (Docket Entry # 1, ¶ 3).

"the complaint [did] not meet the definition of sexual harassment." (Docket Entry # 8, Ex. 1). The finding notes that, "[B]oth parties should receive a written copy of the Finding, given an opportunity to ask any questions, informed of their rights to appeal, and offered a resolution meeting with the other party." (Docket Entry # 8, Ex. 1). The record does not address whether a resolution meeting ever occurred.

Following the dismissal of plaintiff's internal harassment complaint, Milliken "would wait until everyone was at lunch and . . . loom over [plaintiff] causing [her] to be afraid that he might grab [her] again." (Docket Entry # 1, ¶ 3). Milliken would wait until plaintiff was on the switchboard before deciding he wanted filing done by her. (Docket Entry # 8, Ex. 1). He would come up behind her and lean over her, asking her to stop and file documents. (Docket Entry # 8, Ex. 1). "This was hard on [plaintiff] ever feeling comfortable." (Docket Entry # 8, Ex. 1).

Turning to the second source of plaintiff's complaint, while working at Dimock Street, defendant denied plaintiff's request for less time on the switch board. (Docket Entry # 1, ¶ 2). Plaintiff required less time due to her asthma. (Docket Entry # 1, ¶ 2). Plaintiff's asthma "caused much suffering when an attack would come on[,] mostly caused by trying to speak clearly when [she] could barely breath." (Docket Entry # 1, ¶ 2). By

6

letter dated April 22, 2005, Dr. Edward Rabe, plaintiff's physician, stated, "I have recommended that [plaintiff] work no more than 4 hours per day on the office switchboard during an eight-hour workday."  (Docket Entry # 1, Ex. 4A).

Some time on or before May 6, 2005,[6] plaintiff made an accommodation request to Bacon.  (Docket Entry # 1, Ex. 4H).  In an August 11, 2005 e-mail, Bacon reported to plaintiff that defendant was denying plaintiff's request for an accommodation regarding the switch board.  (Docket Entry # 1, Ex. 4I). Plaintiff appealed that decision to Commissioner Spence[7] via e-mail on August 12, 2005.  (Docket Entry # 1, Ex. 4I).  The record does not reflect the result of that appeal.[8]

On June 20, 2006, plaintiff filed a complaint with the Commonwealth of Massachusetts Commission Against Discrimination ("MCAD").  (Docket Entry # 8, Ex. 3).  That complaint ("MCAD

---

[6]  On May 6, 2009, Catherine Leger-Godek APRN, plaintiff's nurse practitioner, signed a "RAC Medical Information Request Form" describing the accommodation needed for plaintiff.  (Docket Entry # 1, Ex. 4H).  The form requests return to "Lisa Bacon" and provides an address for one of defendant's offices.  (Docket Entry # 1, Ex. 4H).  This court infers that the form was sent to plaintiff's nurse practitioner in response to an accommodation request by plaintiff.

[7]  Lewis H. Spence is a former Commissioner of the Massachusetts Department of Children and Families.

[8]  This court infers, based on plaintiff's complaint (Docket Entry # 1, ¶ 2) that the appeal was similarly denied.

Complaint") was assigned MCAD docket number 06BEM01465 and EEOC[9]
charge number 16C-2006-01625.  (Docket Entry # 8, Ex. 3).  The
MCAD complaint alleged discrimination based on:  (1) "Disability,
Mental Illness"; (2) "Disability, Heart Disease"; and (3)
"Disability, Other (including asthma[)]."  (Docket Entry # 8, Ex.
3).  The MCAD complaint further states, "This is in violation of
M.G.L. 151B Section 4 Paragraph 16 and ADA."  (Docket Entry # 8,
Ex. 3).  The MCAD complaint addresses plaintiff's asthma and bi-
polar afflictions as well as how operating the switchboard causes
plaintiff stress which aggravates her conditions.  (Docket Entry
# 8, Ex. 3).  The MCAD complaint further states that plaintiff
submitted an official request for an accommodation but was denied
an accommodation and subsequently felt forced to retire.  (Docket
Entry # 8, Ex. 3).

     Also on June 20, 2006, Allison Hope ("Hope"), an
Investigator for MCAD, sent plaintiff correspondence advising
plaintiff of her need to file a rebuttal to defendant's position
statement.  (Docket Entry # 8).  On August 31, 2006, Carolyn
Packard, Supervisor for MCAD, sent plaintiff a rebuttal request
("rebuttal request") requiring plaintiff to submit a rebuttal no
later than September, 22, 2006.  (Docket Entry # 8, Ex. 2).  The
rebuttal request asked plaintiff to provide other information

---

     [9]  The Equal Employment Opportunity Commission ("EEOC")
enforces the federal employment discrimination laws.

supporting her claim of discrimination.  (Docket Entry # 8, Ex. 2).

Plaintiff filed[10] a series of documents with "06BEM01465" written at the top of them.  (Docket Entry # 8, Ex. 1, 4 & 5). One is a copy of the internal harassment complaint plaintiff filed with defendant on November 22, 2004.  (Docket Entry # 8, Ex. 1).  Plaintiff handwrote, "rebuttal for 06BEM01465" and "mental harassment" on the top of that document.  (Docket Entry # 8, Ex. 1).  She further made a handwritten note describing the incident with Milliken on the bottom of that document.  (Docket Entry # 8, Ex. 1).  She also signed[11] it.  (Docket Entry # 8, Ex. 1).  The handwritten date above the note is "9/10/06."  (Docket Entry # 8, Ex. 1).  The other two rebuttal documents (Docket Entry # 8, Ex. 4 & 5) address the stresses plaintiff claims she endured in the Dimock Street work environment, exclusive of the incident with Milliken.

On July 23, 2007, MCAD issued a lack of probable cause finding regarding the MCAD complaint because "the Commission [was] unable to conclude that the information obtained establishes a violation of the statutes."  (Docket Entry # 14,

---

[10]  This court infers, although plaintiff does not expressly allege, that these documents were filed with MCAD.

[11]  Plaintiff may also have signed at the top of the first page of this document where "rebuttal for 06BEM01465" is written. The handwriting is cut off and it is not clear what exactly is written.

9

Ex. B).[12]  Plaintiff appealed this finding and on May 7, 2008,

Martin Ebel, Commissioner, affirmed it.  (Docket Entry # 14, Ex.

C).[13]  On August 15, 2008, Boston Area Office of the EEOC,

"adopted the findings of the state or local fair employment

practices agency that investigated [the] charge."[14]  (Docket

Entry # 14, Ex. D).[15]  Plaintiff filed this action on September

9, 2008.  (Docket Entry # 1).


## DISCUSSION

I.  The ADA and chapter 151B Claims

"Under both the ADA and Chapter 151B, employers are required

to assist an otherwise qualified employee who has a disability by

providing reasonable accommodations that would enable [her] to

perform [her] job."  Tobin v. Liberty Mut. Ins. Co., 553 F.3d

---

[12]  "In assessing the motion[] under Fed.R.Civ.P. 12(b)(6),
[the court] may also review documents outside of the pleadings
where they are undisputed, central to plaintiff['s] claims, and
sufficiently referred to in the complaint or incorporated into
the movant's pleadings."  In re Citigroup, 535 F.3d 45, 52 (1st
Cir. 2008).  As plaintiff was required to proceed before the U.S.
EEOC before filing this lawsuit, plaintiff's MCAD complaint and
EEOC's adoption of MCAD's findings are central to the allegations
in her complaint and may be considered for purposes of this
motion.  See Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005)
(considering employee's right to sue letter from EEOC in passing
on Rule 12(b)(6) motion).

[13]  See footnote twelve.

[14]  All employment complaints filed with MCAD are
automatically filed with the EEOC.  29 C.F.R. § 1601.13(a)(4).

[15]  See footnote twelve.

121, 125 (1st Cir. 2009); see also 42 U.S.C. § 12112(b)(5)(A); Mass.Gen.L. ch. 151B, § 4(16). Chapter 151B "tracks the ADA in virtually all respects." Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 20 n. 5 (1st Cir. 2002); see also Mulloy v. Acushnet Co., 460 F.3d 141, 154 (1st Cir. 2006) (Massachusetts Supreme Judicial Court ("SJC")indicates that "'federal case law construing the ADA should be followed in interpreting the Massachusetts disability law'").

Defendant moves to dismiss these claims[16] as barred by the Commonwealth of Massachusetts' ("the Commonwealth") sovereign immunity. Because of the potentially different outcomes regarding immunity from federal, as opposed to state, claims in federal court, this court analyzes the claims individually.

Defendant moves to dismiss the ADA and chapter 151B claims for lack of federal subject matter jurisdiction under Rule 12(b)(1). (Docket Entry # 13). Defendant relies on the sovereign immunity granted to it by the Eleventh Amendment. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." Board of Trustees of the University of Alabama

_____

[16] Defendant does not address plaintiff's chapter 151B claim. This court, however, will analyze its subject matter jurisdiction over the chapter 151B claim sua sponte. See Espinal-Dominguez v. Puerto Rico, 352 F.3d 490, 495 (1st Cir. 2003) (federal courts have "an unflagging obligation to notice jurisdictional defects and to pursue them on our own initiative").

11

v. Garrett, 531 U.S. 356, 363 (2001).

Defendant's Eleventh Amendment argument exists only if defendant is considered a department or agency of the Commonwealth. See Alabama v. Pugh, 438 U.S. 781 (1978) (Eleventh Amendment generally is recognized as a bar to suits against a State, its departments and agencies unless the State has consented to suit). Plaintiff fails to argue that defendant is not an agency of the Commonwealth. The First Circuit assumes that defendant, DSS, is an arm of the Commonwealth in cases where the plaintiff fails to argue that it is not. See, e.g., O'Neil v. Baker, 210 F.3d 41, 47 n. 5 (1st Cir. 2000) (the plaintiff "made no claim that the DSS should not be considered an arm of the state . . . [t]herefore, we assume that it is"); cf. Fred v. Roque, 916 F.2d 37, 39 n. 4 (1st Cir. 1990) ("Appellee has not argued that the Department of Education is not an arm of the government . . . and hence we assume that it is"). This court, therefore assumes that defendant is an agency of the Commonwealth for purposes of Eleventh Amendment analysis. See, e.g., Rago v. Samaroo, 344 F.Supp.2d 309, 313 (D.Mass. 2004) ("DSS, as an agency of the Commonwealth, is not subject to suit in this court"); Donald M v. Matava, 668 F.Supp. 703, 706 (D.Mass. 1987) ("the state is the 'real, substantial party in interest' in the claim for damages against the Commissioner of DSS").

A.   <u>The ADA Claim</u>

This court first looks to two potential exceptions to defendant's immunity in the context of federal claims:  (1) "Congress may abrogate a State's immunity by expressly authorizing such a suit pursuant to a valid exercise of power"; and (2) "a State may waive its sovereign immunity by consenting to be sued in federal court."  <u>Maysonet-Robles v. Cabrero</u>, 323 F.3d 43, 49 (1st Cir. 2003); <u>see</u> <u>College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board</u>, 527 U.S. 666, 670 (1999).

While Congress may abrogate a state's sovereign immunity in certain circumstances, <u>see</u>, <u>e.g.</u>, <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 55 (1996) (describing the two prongs for determining whether Congress has abrogated State sovereign immunity), the Court in <u>Garrett</u> held that Congress has not validly abrogated a state's sovereign immunity when private individuals sue for monetary damages under Title I of the ADA. <u>Garrett</u>, 531 U.S. at 374 n. 9; <u>see also</u> <u>Torres-Alamo v. Puerto Rico</u>, 502 F.3d 20, 24 (1st Cir. 2007) (holding that Commonwealth is immune to all claims under Title I of the ADA).  Therefore, this court turns to whether defendant waived its sovereign immunity to suit in federal court.

A defendant may waive its immunity in three ways:  "(1) by a clear declaration that it intends to submit itself to the

jurisdiction of a federal court or administrative proceeding; (2) by consent to or participation in a federal program for which waiver of immunity is an express condition; or (3) by affirmative conduct in litigation." Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 51 (1st Cir. 2006).

Plaintiff fails to identify any law of the Commonwealth that unmistakably demonstrates defendant's intention to submit to the jurisdiction of the federal courts.[17] Furthermore, no federal program which waives defendant's immunity is at issue here. Therefore, this court turns to whether defendant has waived immunity by affirmative conduct in litigation.

In order to find consent by affirmative conduct in litigation, "the State's actions must evince a clear choice to submit its rights for adjudication by the federal courts." Maysonet-Robles, 323 F.3d at 52 (finding no waiver where sovereign neither answered the plaintiffs' complaint nor filed affirmative counterclaims or third-party complaints). Here, defendant has not yet filed an answer to the complaint. Defendant also has not filed counterclaims.

A general rule announced by the Supreme Court is that "where

_____

[17] "The party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). Once the defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. See Thomson v. Gaskill, 314 U.S. 442, 446 (1942); Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996).

a state voluntarily become [sic] a party to a cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment."   <u>Gunter v. Atlantic Coast Line R. Co.</u>, 200 U.S. 273, 284 (1906); <u>see</u> <u>College Savings Bank</u>, 527 U.S. at 681 n. 3 (citing <u>Gardner v. New Jersey</u>, 329 U.S. 565 (1947)).   For example, in <u>Lapides</u> "the State was brought involuntarily into the case as a defendant in the original state-court proceedings[;] . . . [b]ut the State then voluntarily agreed to remove the case to federal court."   <u>Lapides v. Board of Regents of University System of Georgia</u>, 535 U.S. 613, 620 (2002).   "In doing so, it voluntarily invoked the federal court's jurisdiction."   <u>Id.</u>   Here, defendant was brought involuntarily into federal court and has only acted to dismiss the claims brought upon it.   It follows that defendant has not impliedly consented to jurisdiction before this court since no affirmative conduct in litigation has been made.

Therefore, this court finds that defendant has not waived its sovereign immunity from suit under the ADA in federal court. Accordingly, this court lacks subject matter jurisdiction to hear the ADA Claim.


B.   <u>The Chapter 151B Claim</u>

The Eleventh Amendment also prohibits federal courts from

hearing cases brought against nonconsenting states under state law.  <u>See</u> <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 106 (1984) ("it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law").  As previously explained, as an agency of the Commonwealth, defendant is immune from suits under state law in federal court unless one of the three <u>Ramos-Pinero</u> waivers is found.

This court's analysis of the ADA claim demonstrates that defendant has not consented to suit by affirmative litigation conduct.  Furthermore, this case does not involve participation in a federal program for which waiver of immunity is an express condition.  Therefore, the remaining question is whether the Commonwealth has made a clear declaration that it intends to submit itself to the jurisdiction of a federal court.

The SJC has ruled that the Commonwealth waives immunity from chapter 151B claims in Massachusetts state courts.  <u>See</u> <u>Bain v. City of Springfield</u>, 678 N.E.2d 155, 159 (Mass. 1997).  The First Circuit, however, is silent regarding whether such claims are barred by sovereign immunity in federal court.  <u>See</u> <u>Adams</u>, 510 F.Supp.2d at 160.

Three recent decisions in this district suggest the Commonwealth has not waived its immunity in federal court under

chapter 151B.  The court in <u>Adams</u> was persuaded through a
statutory construction analysis that the "text of Chapter 151B
contemplates litigation only in state court" and that the
"specific statutory references to the courts of the Commonwealth
raise an inference that federal courts were intentionally omitted
by the state legislature."  <u>Id.</u>  The court in <u>Lynch</u> cited
<u>Marsolais v. Massachusetts Dept. of Correction</u> for the
proposition that "M.G.L. ch. 151B does not contain . . . a
provision" that "specifically authoriz[es] suit against the state
to proceed in federal court."  <u>Lynch v. Massachusetts State
Senate</u>, 495 F.Supp.2d 175, 179 (D.Mass. 2007).  Finally, the
court in <u>Marsolais</u> summarily found that "Massachusetts has not
waived its sovereign immunity or otherwise consented to suit in
federal court arising under [chapter 151B]."  <u>Marsolais v.
Massachusetts Dept. of Correction</u>, 2002 WL 373305, *4 (D.Mass.
Mar. 7, 2002).

"Statutory interpretation begins with the language of the
statute."  <u>In re Hill</u>, 562 F.3d 29, 32 (1st Cir. 2009).  "[I]t is
settled beyond hope of contradiction that 'courts must presume
that a legislature says in a statute what it means and means in a
statute what it says.'"  <u>Ruiz v. Bally Total Fitness Holding
Corp.</u>, 496 F.3d 1, 8 (1st Cir. 2007) (quoting <u>Barnhart v. Sigmon
Coal Co.</u>, 534 U.S. 438, 461-62 (2002)).  "[W]hen a statute's
plain language points in a single direction, an inquiring court

ordinarily should look no further." In re 229 Main Street Ltd. Partnership, 262 F.3d 1, 5 (1st Cir. 2001).

Chapter 151B makes reference to the state superior, probate and housing courts as venues for suits, but never refers to the federal courts. See Adams v. Massachusetts Dept. of Revenue, 510 F.Supp.2d 157, 160 (D.Mass. 2007). Specifically, the statute states that an aggrieved person may commence a civil action "in the superior or probate court for the county in which the alleged unlawful practice occurred or in the housing court within whose district the alleged unlawful practice occurred." Mass. Gen. L. ch 151, § 9. In other sections of the statute, there is mention of only state courts. See Mass. Gen. L. ch. 151B, §§ 5[18] & 6.[19]

"It is our duty 'to give effect, if possible, to every clause and word of a statute.'" United States v. Rodriquez, 26 F.3d 4, 8 (1st Cir. 1994) (quoting United States v. Menasche, 348 U.S. 528, 538-39 (1955)). It follows that the Massachusetts legislature intended to waive its immunity for claims brought in specific state courts, but not federal courts. To find otherwise would be to interpret "superior or probate court" and "housing

---

[18] The attorney general may bring a civil action for complainant "in the superior court for the county in which the unlawful practice occurred." Mass. Gen. L. ch. 151B, § 5.

[19] "The jurisdiction of the superior court shall be exclusive and its final order or decree shall be subject to review by the supreme judicial court." Mass. Gen L. ch. 151B, § 6.

court" simply as "court."  That would break the "cardinal

principle of statutory construction . . . to save and not to

destroy."  Rodriguez, 26 F.3d at 8.

This court therefore concludes that defendant has not waived

its sovereign immunity from suits under state law in federal

court.  Accordingly, this court lacks subject matter jurisdiction

to hear the chapter 151B claim.


II.  Title VII Claim

Defendant moves to dismiss the Title VII claim under Rule

12(b)(6).  "Dismissal for failure to state a claim is appropriate

if the complaint fails to set forth factual allegations, either

direct or inferential, respecting each material element necessary

to sustain recovery under some actionable legal theory."

Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).  "The

complaint must contain 'enough facts to raise a reasonable

expectation that discovery will reveal evidence' supporting the

claims."  Fantini v. Salem State College, 557 F.3d 22, 26 (1st

Cir. 2009) (citing Twombly, 550 U.S. at 556).

"[A] claim of 'hostile environment' sexual harassment is

actionable under Title VII."  Meritor Savings Bank, FSB v.

Vinson, 477 U.S. 57, 73 (1986); see Billings v. Town of Grafton,

515 F.3d 39, 47 (1st Cir. 2008).  In order to prove this type of

sexual harassment, plaintiff must show "a sexually objectionable

environment [that is] both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).  Here, plaintiff subjectively felt that Dimock Street was an objectionable environment.  She states in her complaint, "[Milliken] would wait until everyone was at lunch and . . . loom over me causing me to be afraid that he might grab me again." (Docket Entry # 1, ¶ 3).  Plaintiff further states that the behavior of this coworker following the incident "was hard on my ever feeling comfortable."  (Docket Entry # 8, Ex. 2).

To determine whether an environment is objectively hostile or abusive, courts look at the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Faragher, 524 U.S. at 787-88.  For purposes of making a recommendation on the motion to dismiss, this court finds the incident with Milliken was both severe and humiliating, as plaintiff states that he "grabbed me from behind almost inserting his fingers into my privates."  (Docket Entry #1, ¶ 3).  Milliken "squeezed like a vice."  (Docket Entry # 8, Ex. 1).  The complaint implies that Milliken repeatedly crowded the small receptionist area where plaintiff sat which may

20

plausibly lead to a finding of unreasonably interfering with an employee's work performance.  (Docket Entry # 1, ¶ 3; Docket Entry # 8, Ex. 1).  This court thus finds that plaintiff adequately pled a general claim of gender discrimination sexual harassment under Title VII[20] and that the allegations raise her right to relief above the speculative level.

Defendant alleges that plaintiff's Title VII claim is nonetheless barred because it falls outside the scope of her administrative complaint.  (Docket Entry # 14).  Title VII claims require an employee to file an administrative charge as a prerequisite to commencing a civil action for employment discrimination.  See 42 U.S.C. § 2000e-5(f).  The purpose of exhausting administrative remedies is to provide the employer with prompt notice of the claim and to give an opportunity for early conciliation.  See Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990).  The employee may then commence a civil action if, and only if, the EEOC has dismissed the administrative complaint, granted a right to sue letter or has itself failed to begin an action within 180 days of the original EEOC complaint. See Id.; see also Franceschi v. U.S. Dept. of Veterans Affairs, 514 F.3d 81, 84 (1st Cir. 2008); Ahanotu v. Massachusetts

_____

[20]  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

Turnpike Authority, 466 F.Supp.2d 378, 390 (D.Mass. 2006).  On
June 20, 2006, plaintiff filed a complaint with the MCAD alleging
discrimination by defendant based on her disabilities.  (Docket
Entry # 8, Ex. 3; Docket Entry # 14, Ex. A).  This MCAD complaint
does not mention the incident with Milliken.

     "The scope of the civil complaint is . . . limited by the
charge filed with the EEOC and the investigation which can
reasonably be expected to grow out of that charge."  Thornton v.
United Parcel Service, Inc., 2009 WL 3766264, *3 (1st Cir. Nov.
12, 2009).  It may not extend "beyond[] the parameters of the
underlying administrative charge."  Jorge v. Rumsfeld, 404 F.3d
556, 565 (1st Cir. 2005).  "This does not mean that the scope of
the suit is inevitably limited to the allegations in the
administrative complaint."  Id.  Moreover, "the exact wording of
the charge of discrimination need not 'presage with literary
exactitude the judicial pleadings which may follow.'"  Grinnell
Corp., 915 F.2d at 38-39.  The scope of the suit is "nonetheless
constrained by those allegations in the sense that the judicial
complaint must bear some close relation to the allegations
presented to the agency."  Jorge v. Rumsfeld, 404 F.3d at 565.

     Defendant is correct to point out that plaintiff's MCAD
complaint "alleges discrimination on the basis of disability
only."  (Docket Entry # 14).  Nonetheless, as the law directs,
the scope of this suit is not strictly limited to the allegations

in the administrative complaint.  This court looks to the investigation which was reasonably expected to grow out of the MCAD filings.

"To be within the investigatory scope, the agency must be informed of the claim in the complaint[,] or during the period of investigation."  Ianetta v. Putnam Investments, Inc., 142 F.Supp.2d 131, 134 (D.Mass. 2002).  The court in Ianetta reasoned that if the "MCAD complaint was insufficient to alert the agency of [the plaintiff's] sex-discrimination claim, [the plaintiff's] Rebuttal certainly provided such notice."  Id. at 135.  It follows, and the First Circuit holds, "[w]hat controls is not what the EEOC did but what it was given the opportunity to do."  Grinnell Corp., 915 F.2d at 39 n. 4 (1st Cir. 1990).

Here, the record is devoid of the actual investigation MCAD undertook.  Nonetheless, for purposes of a Rule 12(b)(6) analysis, the record shows that in rebuttal to defendant's position statement before MCAD, plaintiff filed the internal harassment complaint.  (Docket Entry # 8, Ex. 2).  This court will therefore not recommend dismissal of the Title VII claim on a Rule 12(b)(6) motion for failing to exhaust administrative remedies when the MCAD had before it a detailed account of the alleged sexual harassment incidents involving Milliken.

CONCLUSION

In accordance with the foregoing discussion, this court

**RECOMMENDS**[21] that the motion to dismiss (Docket Entry # 13) be

**ALLOWED** as to the ADA and chapter 151B claims, and **DENIED** as to

the Title VII claim.


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[21]   Any objections to this Report and Recommendation must be
filed with the Clerk of Court within 14 days of receipt of the
Report and Recommendation to which objection is made and
accompanied by the basis for such objection.  Any party may
respond to another party's objections within 14 days after
service of the objections.  Failure to file objections within the
specified time waives the right to appeal the order.  See Rule
72, Fed. R. Civ. P.