```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

CHARLOTTE MOORER,              )
        Plaintiff,             )
                               )
        v.                     )     C.A. No. 08-11584-MLW
                               )
DEPARTMENT OF SOCIAL           )
SERVICES,                      )
        Defendant.             )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                        August 16, 2010

I. SUMMARY

Pro se plaintiff Charlotte Moorer alleges state and federal disability and sex discrimination claims against defendant Department of Social Services ("DSS"). While Moorer's complaint did not identify the legal bases for her claims, her complaint has been liberally construed by the Magistrate Judge as raising claims under Title I of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§12112 et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e et seq., and section four of Massachusetts General Laws ch. 151B.[1]  Moorer's claims arise out of DSS's alleged failure to accommodate her disabilities

---

[1] It was appropriate for the Magistrate Judge in this case to liberally construe the complaint to determine the bases for Moorer's claims. See, e.g., Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000) (recognizing that "complaints drafted by non-lawyers are to be construed with some liberality").

1

and alleged sexual harassment she suffered while working for DSS.

On August 21, 2009, DSS filed a Motion to Dismiss (the "Motion") Moorer's complaint in its entirety. On October 16, 2009, Moorer filed a memorandum in opposition to the Motion, in which she cited no legal authority. On October 27, 2010, the case was referred to Magistrate Judge Marianne B. Bowler for all pretrial purposes. After a hearing to address the Motion, the Magistrate Judge issued a Report and Recommendation (the "Report"), recommending that this court allow the Motion in part, resulting in the dismissal of all of Moorer's claims except her Title VII claim. DSS filed objections to the Report. Moorer neither filed objections to the Report, nor responded to DSS's objections.

The court has considered de novo the matters as to which objections were made, when those matters were raised before the Magistrate Judge. See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988) ("[Federal Rule of Civil Procedure 72(b)] does not permit a litigant to present new initiatives to the district judge.").

The Magistrate Judge applied the correct legal standards. Her Report is thorough, thoughtful, and persuasive. Her recommendations, therefore, are being adopted. More specifically, the court agrees that DSS's Motion is meritorious, except with regard to Moorer's Title VII claim based on alleged sexual

harassment. While Moorer did not raise any sexual harassment allegations in her initial complaint to the Massachusetts Commission Against Discrimination (the "MCAD"), she included allegations of sexual harassment in her Rebuttal to DSS's Position Statement. Accordingly, the sexual harassment claim was within the scope of the MCAD's investigation and, therefore, Moorer exhausted her administrative remedies.

II. LEGAL STANDARDS

    A.   <u>Motion to Dismiss Under Rule 12(b)(6)</u>

"In order to survive a motion to dismiss [raised pursuant to Federal Rule of Civil Procedure 12(b)(6)], a complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Martino v. Forward Air, Inc.</u>, 609 F.3d 1, 1 (1st Cir. 2010) (quoting <u>SEC v. Tambone</u>, 597 F.3d 436, 444 (1st Cir. 2010) (en banc) (citation omitted)). In considering such a motion, the court must "take all factual allegations as true and [] draw all <u>reasonable</u> inferences in favor of the plaintiff." <u>Rodriguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 96 (1st Cir. 2007); <u>see also</u> <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 266 (1st Cir. 2009). The court must "neither weigh[] the evidence nor rule[] on the merits because the issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." <u>Day v. Fallon Cmty. Health Plan, Inc.</u>, 917 F. Supp. 72, 75 (D. Mass. 1996). A

motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007); see also Rodriguez-Ortiz, 490 F.3d at 95-96 (applying the Bell Atl. standard to a claim under the Private Securities Litigation Reform Act); Morales-Tanon v. Puerto Rico Elec. Power Authority, 524 F.3d 15, 18 (1st Cir. 2008) (applying the Bell Atl. standard to a claim under 42 U.S.C. §1983).

Ordinarily, a court will not consider documents outside of the pleadings in a motion to dismiss. See Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). However, from this rule the First Circuit makes an exception for "documents the authenticity of which are not disputed by the parties[,] official records[,] documents central to plaintiffs' claim[,] or [] documents sufficiently referred to in the complaint." Parker v. Hurley, 514 F.3d 87, 91 n.1 (1st Cir. 2007); see also Beddal v. State Street Bank and Trust, Co., 137 F.3d 12, 16-17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

B. <u>Objections to Magistrate's Report</u>

To the extent a party objects to the Report, the court must "make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1); <u>see also</u> Fed. R. Civ. P. 72. As to all other matters, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1); <u>see also</u> Fed. R. Civ. P. 72.

However, the court need not consider any arguments that a party failed to raise before the Magistrate Judge. <u>See Paterson-Leitch</u>, 840 F.2d at 990. As the First Circuit has written:

> [A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate. . . . Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. . . . [I]t would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and-having received an unfavorable recommendation-shift gears before the district judge.

<u>Id.</u> <u>See also</u> <u>Guzman-Ruiz v. Hernandez-Colon</u>, 406 F.3d 31, 36 (1st Cir. 2005) (noting that "plaintiffs did not make [an] argument to the magistrate, and it is therefore waived").

III. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Moorer worked for DSS for approximately 20 years, first as a "Clerk III" at DSS's Hyde Park Area Office (from 1985-2002) and then as a "Clerk III-Receptionist" at DSS's Dimock Street Area Office (from 2003 until she quit on June 6, 2006). It was at the Dimock Street Area Office that an allegedly hostile work environment existed. The alleged problems in this work environment were: (1) behavior by a coworker which Moorer contends amounted to sexual harassment; and (2) DSS's failure to accommodate Moorer's purported health problems, including asthma and bipolar disorder.

The sexual harassment allegations concern Fred Milliken, a legally blind coworker of Moorer's.[2] Moorer claims that, on November 18, 2004, Milliken walked up behind her, kicked her right heel, and grabbed her "from behind[,] almost inserting his fingers into [her] vagina and then [] squeez[ing] like a vise." Moorer MCAD Rebuttal; see also Compl. at 1, ¶3. On November 22, 2004, Moorer filed an internal harassment complaint with DSS regarding this incident, and DSS initiated an investigation. See DSS Sexual Harassment Compl. On January 18, 2005, DSS Civil Rights Officer Lisa Bacon concluded, among other things, that Moorer's complaint did not amount to sexual harassment and that the "collision was inadvertent," with "[n]either party intend[ing] to touch the other

---

[2] Miliken allegedly has virtually no peripheral vision. See, e.g., Compl. at 1, ¶3.

in any way." Id. Moorer alleges that, in the wake of the dismissal of her internal harassment complaint, Milliken would wait until other coworkers were away at lunch and then "loom over" her, leading her to fear that she might be grabbed again, and making it "hard on [Moorer to] ever feel[] comfortable." Moorer MCAD Rebuttal; see also Compl. at 1, ¶3.

The failure to accommodate allegation concerns DSS's denial of Moorer's request for less time on the switch board, which she asserts was required in light of her health problems. Moorer made an accommodation request to Bacon and, in an August 11, 2005 email, Bacon informed Moorer that DSS was denying that request. See Bacon Email in Ex. 4I to Compl. The following day, Moorer appealed that decision to then-DSS Commissioner Lewis H. Spence. See Moorer Email in Ex. 4G to Compl. The record does not reflect the outcome of that appeal. However, the Magistrate Judge inferred that the appeal was denied and this court concurs with that inference.

On June 20, 2006, Moorer filed an administrative complaint against DSS with the MCAD. See MCAD Compl., Ex. A to Def.'s Mot. Dismiss. In it, she alleged discrimination based on: (1) "Disability, Mental Illness"; (2) "Disability, Heart Disease"; and (3) "Disability, Other (including asthma[])." Id. Her MCAD complaint alleges that DSS's conduct is "in violation of M.G.L. 151B Section 4 [¶]16 and ADA," and states that Moorer has asthma and bipolar disorder, which are aggravated by working the

7

switchboard without accommodations. See id.  Her MCAD complaint also states that Moorer submitted a request for accommodation, was denied, and thus felt forced to retire, which she did on June 5, 2006. See id.  Notably, Moorer did not allege in the MCAD complaint that she was the subjected to any sexual harassment or a hostile work environment while employed at DSS. See id.

   The MCAD sent Moorer a letter on June 20, 2006, advising her that Allison Hope had been assigned to investigate Moorer's MCAD complaint. See MCAD Hope Letter.  The letter also stated that the MCAD had informed DSS that it must provide Moorer with a copy of its Position Statement, meaning its response to her allegations. See id.  In addition, the letter informed Moorer that, once DSS filed its Position Statement, she would have 21 days to file a Rebuttal with the MCAD. See id.  DSS filed a Position Statement in response to Moorer's MCAD complaint.  On August 31, 2006, MCAD Supervisor Carolyn Packard sent Moorer a notice explaining that Moorer had 21 days to file a Rebuttal. See MCAD Packard Letter.

   Moorer filed a Rebuttal with the MCAD comprised of several documents, most of which concern her alleged health concerns. See Moorer MCAD Rebuttal.  However, among these Rebuttal documents is a copy of DSS's findings concerning Moorer's internal harassment complaint about Milliken. See id.  Moorer handwrote "Rebuttal for 06EBM01465" and "Mental Harassment" on the top of this document's first page.  06EBM01465 is the MCAD Docket Number for Moorer's MCAD

complaint. See id. Notably, on the bottom of the second page of the document are handwritten notes, dated September 10, 2006, in which Moorer details Milliken's alleged sexual harassment. See id.

The MCAD conducted an investigation and, on July 23, 2007, issued a lack of probable cause finding. See MCAD Finding, Ex. B. to Def.'s Objections. Nothing in the finding referred to any allegations of sexual harassment. See id. Moorer appealed the MCAD's finding and, on May 7, 2008, the finding was affirmed by the MCAD. See MCAD Affirm, Ex. C to Def.'s Mot. Dismiss. On August 15, 2008, the EEOC adopted that finding. See EEOC Dismissal and Notice of Rights, Ex. D to Def.'s Mot. Dismiss. Moorer filed the instant action on September 9, 2008. See Compl.

IV. ANALYSIS

    A. Moorer's ADA and Mass. Gen. Laws ch. 151B Claims

The Magistrate Judge found that Moorer's claims under the ADA and Massachusetts General Laws ch. 151B were barred by the Eleventh Amendment's grant of immunity and, therefore, allowed DSS's motion to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(1). See Report at 10-19. In the absence of any objection by Moorer, the court accepts this conclusion. See Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998) ("[A] party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals.").

B. <u>Moorer's Title VII Claim</u>

In the Motion, DSS argued that Moorer's Title VII claim is barred because it falls outside the scope of her MCAD complaint and, therefore, she failed to exhaust her administrative remedies as required by Title VII. <u>See</u> 42 U.S.C. §2000e-5(f); <u>Franceschi v. U.S. Dept. of Veterans Affairs</u>, 514 F.3d 81, 85 (1st Cir. 2008) ("Before an employee may sue in federal court on a Title VII claim, [s]he must first exhaust administrative remedies.").

The Magistrate Judge, however, disagreed. She reasoned that, while Moorer did not raise the issue of sex discrimination in her initial MCAD complaint, she did raise it in her Rebuttal to DSS's Position Statement. Accordingly, while the record suggests that only Moorer's accommodation claims were addressed during the MCAD investigation, the Magistrate Judge nevertheless found Moorer's sexual harassment claim "'[t]o be within the investigatory scope'" because the MCAD was informed of the issue "'during the period of investigation.'" Report at 23 (quoting <u>Ianetta v. Putnam Investments, Inc.</u>, 142 F. Supp. 2d 131, 134 (D. Mass. 2002) (finding that plaintiff had raised a sex discrimination claim before the MCAD by discussing it in his Rebuttal, even if he had failed to raise the claim in his MCAD complaint)). The Magistrate Judge concluded that, because the sexual harassment issue was brought to the MCAD's attention during its investigation of Moorer's administrative complaint, Moorer did, in fact, exhaust her

administrative remedies as to her Title VII claim. See Report at 23.

DSS has objected to the Magistrate Judge's recommendation that the court find that Moorer administratively exhausted her Title VII claim. DSS also raised two distinct arguments in favor of dismissing Moorer's Title VII claim that were not presented to the Magistrate Judge. The court addresses DSS's objections below, reviewing de novo only those legal issues which were raised before the Magistrate Judge. See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Paterson-Leitch, 840 F.2d at 990.

1. DSS's Argument Regarding Administrative Exhaustion

DSS argues that the Magistrate Judge erred in finding that Moorer exhausted her sexual harassment claim. See Def.'s Objections at 5-6. DSS contends that, while Moorer may have provided a Rebuttal to the MCAD that described Milliken's alleged sexual harassment, DSS was never provided a copy of that filing and was never informed that any sexual harassment claim was a part of the MCAD's investigation. See id.; see also Pariser Aff. at ¶¶2-4.[3] Therefore, DSS states that it had no notice of any sexual harassment claim by Moorer until she filed the instant complaint.

---

[3] Brian Pariser is an Assistant General Counsel with the Department of Children and Families, and he represented the defendant in the MCAD proceeding concerning Moorer's administrative complaint. See Pariser Aff. at ¶1. He states that "if [DSS] has received notice of a sexual harassment claim by plaintiff during the MCAD investigation it would have been brought to [his] attention." Id. at ¶3.

11

See Def.'s Objections at 6; Pariser Aff. at ¶¶3-4.  Accordingly, DSS argues that the purpose of the administrative exhaustion requirement would be frustrated if Moorer's sexual harassment claim were to survive the Motion. See Def.'s Objections at 6.

"The purpose of mandatory submission to the MCAD process is to provide notice to the prospective defendant and to encourage conciliation and settlement of disputes." Fant v. New England Power Serv. Co., 239 F.3d 8, 11 (1st Cir. 2001).  "This purpose would be thwarted if plaintiffs 'were permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action.'" Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).

Here, it is true that Moorer's purported failure to provide DSS with a copy of her rebuttal may have stymied the prospects of reconciling or settling her dispute.  The fact that the MCAD's lack of probable cause finding discusses only Moorer's accommodation claim suggests that the MCAD investigation did not focus on the alleged sexual harassment. See MCAD Finding.  Nevertheless, the court concludes that, even if Moorer's sexual harassment allegation was not investigated by the MCAD or brought to DSS's attention, her current Title VII claim should not be dismissed on that basis.

The MCAD never instructed Moorer that she had to provide a copy of her Rebuttal to DSS.  In its August 31, 2006 letter, the MCAD simply informed Moorer that, as a result of DSS filing a

Position Statement, "[t]he next step [was for Moorer to] file a Rebuttal to [DSS's] answer." MCAD Packard Letter.  The letter instructed Moorer to explain why the information in DSS's Position Statement was "incorrect or misleading," and to "[p]rovide other information that you believe would support your claim of discrimination, including copies of documents, [etc.]" Id.  The letter informed Moorer she had 21 days to file a Rebuttal and that, when she did, she should address it to the attention of Carolyn Packard. See id.

Moorer complied with those instructions and included in her Rebuttal an allegation of sexual harassment by Milliken. See Moorer MCAD Rebuttal.  Therefore, Moorer adequately alleged sexual harassment for the purposes of the "scope of the investigation rule." See, e.g., Fantini v. Salem State College, 557 F.3d 22, 26-27 (1st Cir. 2009) (discussing this rule).  Under this rule, "'a civil action is not determined by the specific language of the charge filed with the agency, but rather, may encompass acts of discrimination which the MCAD investigation could reasonably be expected to uncover.'" Davis v. Lucent Techs., Inc., 251 F.3d 227, 233 (1st Cir. 2001) (quoting Conroy v. Boston Edison Co., 758 F. Supp. 2d 54, 58 (D. Mass. 1991)).  "To be within the investigatory scope, the agency must be informed of the claim in the complaint or during the period of investigation." Ianetta, 142 F. Supp. 2d at 134 (emphasis added).  Notably, the scope of the plaintiff's

13

administrative charge "'is not what [the agency] did [in its investigation of an administrative complaint,] but what it was given the opportunity to do.'" Powers v. Grinnell Corp., 915 F. 2d 34, 39 (1st Cir. 1990) (quoting Oglesby v. Coca-Cola Bottling Co., 620 F. Supp. 1336, 1344 (N.D. Ill. 1985)).

Here, during the course of the MCAD investigation, Moorer alleged that she had been sexually harassed. Accordingly, the MCAD had the "opportunity" to investigate that claim and could reasonably have been expected to inquire about Milliken's actions. See id.; Davis, 251 F.3d at 233. It is true that the purposes of the administrative exhaustion rule would have been better served if Moorer or the MCAD had provided DSS with a copy of her Rebuttal, thus putting DSS on notice of her complete set of claims. See Fant, 239 F.3d at 11; Lattimore, 99 F.3d at 464. However, Moorer, an unsophisticated pro se litigant, should not be prejudiced for submitting her Rebuttal in the manner that the MCAD directed. See MCAD Hope Letter; MCAD Packard Letter; see also Institutio de Educacion Universal, 209 F.3d at 23.

Accordingly, Moorer did not fail to exhaust her administrative remedies, and her Title VII claim is not being dismissed for failing to do so.

### 2. DSS's Other Objections

DSS raises two additional arguments in favor of dismissing Moorer's Title VII sexual harassment claim, which were not

presented in the Motion or argued before the Magistrate Judge. First, DSS argues that, even if Moorer is found to have exhausted her administrative remedies as to her Title VII claim, it is nevertheless time-barred because she did not file the instant complaint within 300 days of Milliken's alleged harassment. See Def.'s Objections at 6-8. In addition, DSS argues that, even if Moorer exhausted her administrative remedies and her Title VII claim is not time-barred, the claim should be dismissed because Moorer's complaint fails to allege a claim of sexual harassment sufficient to justify relief. See id. at 8-10.

Because DSS failed to raise these issues before the Magistrate Judge, this court is exercising its discretion not to consider them now. "Parties must take before the magistrate, 'not only their "best shot" but all of their shots.'" Borden v. Secretary of Health and Humans Servs., 836 F.2d 4, 6 (1st Cir. 1987) (quoting Singh v. Superintending School Committee, 593 F. Supp. 1315, 1318 (D. Me. 1984)); see also Guillemard-Ginorio v. Contreras-Gomez, 490 F.3d 31, 36 (1st Cir. 2007) (upholding District Court's decision to reject a party's argument because the party had failed to raise it before the Magistrate Judge); In re Neurotinin Marketing, Sales Practices and Prods., 433 F. Supp. 2d 172, 177 (D. Mass. 2006) ("The Court will not consider any objections which raise new issues not put before the Magistrate Judge in the original briefing on the motion to dismiss."); Sylvia's Haven, Inc. v. Massachusetts

15

Development Fin. Agency, 397 F. Supp. 2d 202, 211 (D. Mass. 2005) (same). For while a party is "entitled to a de novo review by the district court of the recommendations to which he objected, . . . he [is] not entitled to a de novo review of an argument never raised." Borden, 836 F.2d at 6 (citations omitted).

In this case, DSS could have raised all of its issues before the Magistrate Judge and there is no good reason to excuse it from having done so. Rather, it is most fair and efficient to require that the issues DSS raised for the first time in its objections be decided after discovery is completed, on a motion for summary judgment or at trial.

V. CONCLUSION

In view of the foregoing, the court hereby adopts and incorporates in this Memorandum and Order the attached Magistrate Judge Report and Recommendation. For the reasons discussed in this Memorandum and more fully in the Report, DSS's Motion to Dismiss (Docket No. 13) is ALLOWED in part and DENIED in part. Moorer's remaining claim is returned to the Magistrate Judge for continued pretrial case management, including reports and recommendations on any dispositive motions, pursuant to the September 14, 2009 Order of Reference.

    /s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE